IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MIMI T. EASTRIDGE, | * |
| Plaintiff, | * |
| v. | *   Civil Case No. SAG-19-1516 |
| FIFTH THIRD BANK, | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiff Mimi T. Eastridge ("Plaintiff") filed this case asserting alternative claims for conversion and negligence against Defendant Fifth Third Bank ("Fifth Third"), arising out of the alleged removal of valuable coins from her safe deposit box. ECF 1. Discovery is now concluded, and Fifth Third has filed a Motion for Summary Judgment ("the Motion"), ECF 33. I have reviewed the Motion, and the Opposition filed by Plaintiff, along with the accompanying exhibits. ECF 33, 42. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Fifth Third's Motion will be granted.

## I. FACTUAL BACKGROUND

On November 9, 2015, Plaintiff leased safe deposit box number 36 at the Fifth Third Branch in Lincolnton, North Carolina. ECF 33-2. The parties executed a Safe Deposit Lease Agreement governing the contractual arrangement, which read in relevant part:

> **SHOULD IT BE DETERMINED THAT FIFTH THIRD IS LIABLE FOR ANY LOSS RELATING TO LESSEE'S BOX, LESSEE AGREES THAT FIFTH THIRD'S LIABILITY SHALL NOT EXCEED TEN THOUSAND DOLLARS ($10,000).**

*Id.* (emphasis in original).  Plaintiff had prior experience leasing safe deposit boxes at other banks. ECF 33-3 at 78:19-79-18.  The Fifth Third employee gave Plaintiff the access key to Box 36 and explained that it could only be opened upon simultaneous insertion of Plaintiff's access key and the bank branch's Master key.  *Id.* at 98:2-14.  In other words, as the Lease Agreement provides, "Fifth Third retains no key that opens the box."  ECF 33-2 ¶ 5.

Plaintiff claims that she placed in Box 36 three U.S. quarters each bearing on the reverse side the words 'United States of Mexico' ("the coins").  ECF 33-6 at 3.  Plaintiff asserts that the coins are "mint errors" or "misprints" worth one hundred million dollars apiece.  *Id.*  However, Plaintiff testified that this valuation was "reached without consultation with any other person or by reference to any particular written or other materials."  ECF 33-4 at 11.  Plaintiff acknowledges that she is "not an expert in coins."  ECF 33-3 at 126:1-3.

According to Plaintiff, she kept the Box 36 access key "on her person at all times," except when she was involuntarily committed for about fourteen days.  ECF 42-1 at 10.  When she returned home from the hospital, Plaintiff located her access key in her mother's washing machine and went to Fifth Third to check on the contents of the safe deposit box.  *Id.* at 11.  She alleges that during that visit on July 29, 2016, she discovered that two of the three "United States of Mexico" coins had been removed from the safe deposit box and replaced with "two gold in color original Mexican coins bearing the imprint 'Ciudad de Mexico.'"  ECF 42-4 ¶ 2.  Plaintiff did not report the incident to authorities at that time.  Instead, she decided to "release and surrender" Box 36 and to open a new safe deposit box at the same branch.  ECF 33-3 at 135-10-16.  She therefore executed a "Release and Surrender of Safe Deposit Box" agreement on July 29, 2016, which reads:

> I hereby acknowledge that all property stored in your safe deposit box pursuant to the Lease Agreement has been withdrawn by the undersigned, that all liability on

>your part is released and ended, and that said Lease Agreement is cancelled, and I accordingly surrender said Box number #36.

ECF 33-5.

Although discovery is concluded, Plaintiff has offered no evidence establishing who removed the coins from Box 36, or when or how the incident occurred. At deposition, Plaintiff admitted suspicion that her family members may have stolen the coins, ECF 33-3 at 163:3-164:14, or "Republican conservative Christians." *Id.* at 111:11-112:11.

Plaintiff first reported the incident to the City of Lincolnton Police Department about nine months after she discovered the missing coins. ECF 33-3 at 161:1-18. Their attempted investigation was unsuccessful. Plaintiff also contacted other agencies including the FBI, the North Carolina District Attorney, and the United States Department of Justice, to no avail. *Id.* at 174:3-175:12; ECF 33-6 at 3-4. She has submitted, as exhibits in this case, documentation regarding her reports to the police department and other agencies.[1] ECF 42-3; 42-5. Her other exhibits consist of her answers to interrogatories, ECF 42-1, excerpts from her deposition testimony, ECF 42-2, an affidavit she executed about what transpired, ECF 42-4, the bank's access card from November of 2015 before the incident occurred, ECF 42-6, and the errata sheet for her deposition, ECF 42-7.

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of

---

[1] Ultimately, the fact that Plaintiff reported her allegations numerous times to numerous agencies does not provide any factual corroboration for those allegations, as the relevant information came solely from her each time.

showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

As noted above, Plaintiff appears *pro se*. Accordingly, her pleadings and motions are subject to liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). However, *pro se* status does not lessen a party's burden with respect to the court's consideration of a summary judgment motion. *See Simmons v. Standard Fire Ins. Co.*, PJM-08-1844, 2010 WL 1881843, at *3 (D. Md. May 7, 2010) ("Although *pro se* pleadings are 'held to less stringent standards than formal pleadings drafted by lawyers,' they 'must still set forth facts sufficient to withstand summary judgment.'" (first internal citation omitted) (quoting *Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002))); *see also Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) ("[Plaintiff]'s status as a *pro se* litigant does not alter his duty on a summary judgment motion.").

With respect to the law governing Plaintiff's state law claims for conversion and negligence, it is well established that a federal court sitting in diversity applies the choice-of-law rules of the state where the lawsuit is filed. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Maryland applies the choice-of-law principle of *lex loci delicti* in tort cases, which uses "the law of the state where the injury occurred." *Fluxo-Cane Overseas Ltd. v E.D. & F. Man Sugar Inc.*, 599 F. Supp. 2d 639, 642 (D. Md. 2009). The state where the injury occurred is determined by assessing where "the last act required to complete the tort occurred." *Philip Morris Inc. v. Angeletti,* 358 Md. 689, 746 (2000). Here, because the alleged wrongful act occurred in Fifth Third's North Carolina branch where Plaintiff rented a safe deposit box, this Court will apply the substantive law of North Carolina to Plaintiff's tort claims.

### III. ANALYSIS

#### A. Economic Loss Rule

Under its economic loss rule, North Carolina law does not permit a plaintiff to assert tort claims arising from a breach of contract.  *See N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 240 S.E. 2d 345, 350 (1978) ("Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.").  The rationale for that rule is to limit the parties to the obligations, rights, and remedies specifically agreed in their contract.[2]  *See Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 402, 499 S.E. 2d 772, 780 (1998) ("To give a party a remedy in tort . . . would permit the party to ignore and avoid the rights and remedies imposed by the parties' contract."); *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164 (4th Cir. 2018) ("We have previously rejected attempts by the plaintiff to manufacture a tort dispute out of what is, at bottom, as simple breach of contract claim as inconsistent both with North Carolina law and sound commercial practice.") (internal quotations omitted).

In this case, Plaintiff and Fifth Third entered into a Safe Deposit Lease Agreement that expressly set forth Plaintiff's remedies in the case of a loss, limiting Fifth Third's liability to $10,000.  ECF 33-2.  Plaintiff's attempt to transform her breach of contract claim into a tort claim to procure a greater recovery, then, would be unavailing even if she could establish Fifth Third's liability for her loss.  Summary judgment is therefore appropriate, since Plaintiff has asserted only tort claims and has not alleged breach of contract.

**B.  Release of liability**

---

[2] While North Carolina has an exception to its economic loss rule in the case of bailments, the parties Safe Deposit Box Lease Agreement expressly disclaims any bailment relationship.  ECF 33-2 ("This Agreement shall not be construed to create any relationship of bailor and bailee between Lessee and Fifth Third, Lessee hereby acknowledges that Fifth Third has no supervision over the articles deposited in the box.").

As described above, on July 29, 2016, upon discovering the missing coins, Plaintiff surrendered Box 36 and opened a new safe deposit box at the same branch. To accomplish that change, she signed a "Release and Surrender of Safe Deposit Box" agreement, in which she released Fifth Third from all liability related to Box 36. Under the express terms of that agreement, Fifth Third is no longer liable for any claims relating to the contents of Box 36, providing an independent basis for summary judgment in Fifth Third's favor.

### C. Failure to Establish a Genuine Issue of Material Fact

In addition to the other grounds for summary judgment described above, Plaintiff has not adduced sufficient evidence to create a genuine issue of material fact as to either conversion or negligence. First, to prove conversion, Plaintiff has to prove "wrongful possession or conversion **by the defendant.**" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (emphasis added). Plaintiff avers, from her personal knowledge, that she placed the coins in the safe deposit box and returned months later to find them missing. She lacks any evidence, however, of how that actually happened or could have happened. The evidence suggests that Box 36 was not tampered with or drilled open. Plaintiff has not demonstrated, or even suggested, that any Fifth Third employee somehow obtained her own access key, which was at her mother's residence in the washing machine with her clothing when she returned from the hospital. She has no knowledge of who removed the coins from the box, and simply cannot show that any Fifth Third employee possessed or converted the coins.

Her negligence theory suffers from a similar lack of supporting evidence. To prove that Fifth Third was negligent, Plaintiff would have to show "the existence of a legal duty or obligation, breach of that duty, proximate cause, and actual loss or damage." *McMurray v. Surety Fed. Sav. & Loan Assoc.*, 82 N.C.App. 729, 731, 348 S.E.2d 162, 164 (1986). Setting aside the other

elements, on the evidentiary record Plaintiff cannot show that Fifth Third breached any duty because she cannot establish what occurred. She has no evidence or even concrete theory as to who stole the coins, with her suspicions ranging from her family members to "the whole Republican party" to "a retired police officer" or "the police department." She acknowledged that to open the box "an associate from the bank has to have her master key with the owner or whoever is posing as the owner in this case to open both sides simultaneously." ECF 33-3 at 98:2-14. Although one of her theories appears to be that one of the third parties listed above appeared with her access key and allowed into her box by a Fifth Third employee, Plaintiff has no evidence that such access occurred. The records presented to this Court do not show any access to the box by any party other than Plaintiff at any time. Thus, there is no evidence that Fifth Third negligently allowed access to the box without, for example, adhering to its security protocols.

## IV.   CONCLUSION

For the three independent reasons set forth above, Fifth Third's Motion for Summary Judgment, ECF 33, will be GRANTED, and this case will be closed. A separate Order follows.

Dated: April 19, 2021                                          /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge